**UNITED STATES of America ex rel. Rodney R. HAYMES, Petitioner-Appellant,**

v.

**Ernest L. MONTANYE, Superintendent, Attica Correctional Facility, Smith, Deputy Superintendent, Attica Correctional Facility, Respondents-Appellees.**

**No. 20, Docket 74-1208.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1974.

Decided Oct. 4, 1974.

Margery Evans Reifler, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., on the brief; Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondents-appellees.

Herman Schwartz, Amherst, N.Y. (Edward I. Koren, Amherst, N.Y., on the brief), for petitioner-appellant.

Before KAUFMAN, Chief Judge, and SMITH and TIMBERS, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

It is clear beyond cavil that American prisons have failed dismally to fulfill the ambition of contemporary penologists that prisoners should be treated and rehabilitated. Although it is impossible to deny that many are sentenced to prison as punishment, however, we cannot condone the idea that the mere fact of incarceration permits a prisoner to be punished at the whim of those charged with his confinement. Rodney Haymes, formerly an inmate at New York's Attica Correctional Facility, initiated this §

1983 action seeking damages for the confiscation of a "legal petition" which he circulated while in custody there, and for his alleged summary punishment two days later by transfer without a hearing to the Clinton Correctional Facility. We reverse the summary judgment dismissing his complaint.

A brief recitation of the facts will aid in framing the issues we are called upon to decide. Haymes was discharged as inmate law clerk in Attica's law library on the morning of June 7, 1972. During the afternoon of that same day, prison authorities seized from Haymes a document which he was circulating among the inmates in the "A" block recreational yard. The writing, prepared by Haymes at the request of other prisoners and signed by 82 inmates, was addressed to Judge Curtin of the United States District Court for the Western District of New York. Although it requested no relief, the petition stated that the signatories were being deprived of legal assistance because of the removal of Haymes and John Washington, another inmate law clerk, from the library. The document charged that law library officer Edward Brady went "out of his way to circumvent inmates legal assistance." It also alleged this to be the reason for the removal of Haymes and Washington from their positions in the library.

Although no explanation for the confiscation was given at the time, Deputy Superintendent Harold Smith stated in an affidavit submitted in response to Haymes's complaint that the papers were seized because Haymes had not asked permission to circulate them, and none of the signors had requested legal assistance, despite the provision of Rule 21 of the Inmate's Rule Book:

21. Inmates are prohibited, except upon approval of the Warden, to assist other inmates in the preparation of legal papers.

While there is some question whether Rule 21 was in fact widely circulated,[1] Smith stated that Haymes had been cautioned on several occasions not to assist other inmates who had not requested and received approval. A notice from former Superintendent Montanye, posted on the cell block bulletin boards April 25, 1972, also stated:

In all instances where inmates desire assistance in the use of the Law Library, they are to present their problems to Correction Officer Brady, who will assist them to the extent necessary or will assign inmates on the Law Library staff to particular cases.

Under no circumstances are inmates to set themselves up as "legal counselors" and receive pay for their services.

Haymes protested the confiscation, asserting that the petition was protected as a special letter under Administrative Bulletin #20, which provides:

9. Special correspondence to public officials: You may write to the President of the United States, Members of Congress, . . . and to any Judge. . . . The letter will not be read or censored.[2]

The real impact of the events leading to the seizure was felt when, two days later, on June 9, 1972, Haymes was transferred without a hearing from Attica to the Clinton Correctional Facility. Although both institutions are maximum security facilities, Clinton is several hundred miles farther away from Haymes's home in Buffalo. After his transfer,

1. Haymes stated in his affidavit submitted to the district court that he had never been given a rule book, nor had one been published since 1969.

2. N.Y. Dep't of Correction, Administrative Bull. No. 20, Jan. 31, 1972. The Bulletin was published shortly after this court decided, in Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 and 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972), that censorship of inmate letters to courts, lawyers and public officials violated the first amendment rights of prisoners.

Haymes wrote twice to Superintendent Montanye protesting the confiscation of the papers and requesting their return. He received no response.

Haymes then began this § 1983 action,[3] alleging that his transfer without hearing to Clinton, in retaliation for his disobedience of Rule 21, deprived him of due process. His complaint also alleged that the petition being circulated was not "legal assistance" but "special correspondence" protected by Administrative Bulletin #20, and that its confiscation was therefore improper. He sought $1500 in compensatory damages for the time he was deprived of the document, and $1500 punitive damages "for the various acts of reprisals taken against" him. Haymes thereafter retained counsel. After considering affidavits and exhibits submitted to him, the judge, on Montanye's motion, "dismissed" Haymes's "application for relief under the Civil Rights Act." Since there is no indication that Judge Curtin found Haymes's claims to be frivolous, see 28 U.S.C. § 1915(d), and because he considered matters outside the pleadings, see F.R.Civ.P. 12(b), his disposition perforce was summary judgment. F.R.Civ.P. 56. Judge Curtin held that the seizure of the document, because it represented unauthorized legal assistance, was proper under Rule 21. He also found no violation of due process in Haymes's transfer. In effect, therefore, Judge Curtin decided that the alleged punitive nature of the transfer was not material. The district judge reasoned that, because no claim was made that "the facilities at Green Haven [sic] are harsher or substantially different from those afforded to petitioner at Attica," the defendants were entitled to judgment as a matter of law.

It is black letter law that the issue on an appeal from a summary judgment is whether the pleadings, affidavits, and other papers before the district court show a "genuine issue as to [some] ma-

terial fact," requiring a trial, F.R.Civ.P. 56(c). Haymes claims that the circumstances of his transfer raise two such issues: whether he was moved to Clinton Correctional Facility as punishment for his disobedience of prison rules and policies, and whether the effects of transfer were sufficiently harsh to make denial of a hearing a violation of due process. If the district court had permitted him to establish a punitive animus behind his transfer, the argument proceeds, he would not have been required to establish that Clinton's facilities were "substantially different" from those at Attica. Rather, Haymes argues, implicit in the very fact of his dislocation are deprivations at least as severe as those which may be imposed as punishment pursuant to the New York Correctional Rules and Regulations. Since some form of hearing is required before a misbehaving inmate can be made to suffer the specified sanctions, summary transfer for similar misbehavior may amount to a denial of due process. We see merit in this contention.

### I.

We find it difficult, in the absence of a trial record, to look upon the circumstances of the transfer as a mere coincidence. The papers reveal that less than forty-eight hours after Haymes was ordered to cease collecting signatures without permission in the recreation yard, he was shipped to the Clinton Correctional Facility hundreds of miles away. But in granting summary judgment, the district court deprived Haymes of an opportunity to prove a causal connection between the two events, finding in effect that the harm he suffered did not warrant affording a hearing irrespective of the motive for the transfer. We do not disagree with the assertion that not every inmate who must endure the burden alleged by Haymes deserves a full panoply of procedural armor. Removal of inmates to

---

3. 42 U.S.C. § 1983 (1970). Although the case has been characterized throughout as a habeas corpus proceeding, the district court properly treated it from the outset as an action under the Civil Rights Statute.

other facilities may be justified by any of a number of concerns quite proper to the administration of prison systems. One scarcely needs to be reminded of the sad events at Attica prison three years ago to understand the explosive potential flowing from the lamentable conditions which confront many prisoners. Although such circumstances neither excuse the need for reform nor justify sacrificing the inmate on the altar of security, they may on occasion render it necessary to take summary action to avert imminent riot. Overcrowding and the not unrelated hazards to health may also call for a prompt response by prison authorities. We certainly have no intention of unnecessarily placing prison officials in a straitjacket. But, generally, in such cases the reasons for transfer are extrinsic to the inmate's behavior, and the decision whether to transfer may not be advanced in any way by providing notice and a hearing to the transferee. Moreover, although the dislocation suffered by the transferred prisoner may be burdensome, the need to avoid more general harm may outweigh his individual claim.[4]

Transfer intended as punishment, however, presents a situation wholly different from the administrative removal of an inmate to another facility. When harsh treatment is meted out to reprimand, deter, or reform an individual, elementary fairness demands that the one punished be given a satisfactory opportunity to establish that he is not deserving of such handling. While some discretion may be appropriate in an administrative determination of the need to avoid violence and unrest, the specific facts upon which a decision to punish are predicated can most suitably be ascertained at an impartial hearing to review the evidence of the alleged misbehavior,[5] and to assess the effect which transfer will have on the inmate's future incarceration. Indeed, in situations where punitive sanctions other than transfer are imposed, the New York correctional system has established procedures which recognize both the demands of elementary fairness and the suitability of an impartial hearing. It is to these regulations that we now turn.

II.

Four years ago the New York Commissioner of Corrections published, pursuant to authority given him by statute, see N.Y. Correction Law §§ 112, 137 (McKinney Supp.1974), Procedures for Implementing Standards of Inmate Behavior. 7 N.Y.C.R.R. § 250 et seq. These rules, presently in force, are intended to be applied in instances where an inmate violates a rule or regulation governing his behavior, or fails to comply with an instruction given him by an employee of the department of corrections. Section 250.1. The code provides that minor infractions may be dealt with merely by counsel, warning, or reprimand. Section 251.5. Other standards apply to more persistent refractory behavior, and to misbehavior involving danger to life, health, security, or property. Reports of such conduct are required to be made in writing to the superintendent, §§ 251.4, 251.5(b), and are reviewed at least weekly by the prison adjustment committee. Section 252.-3(a)–(c). The committee also looks at the information in the inmate's file; it may direct a further investigation, and must "obtain from the inmate as full and complete an explanation of his be-

4. After all these years of reviewing prison problems, we are not too myopic to notice the distinct possibility of arbitrary, misguided, or disingenuous invocation of administrative justifications for transfer. Although we must to some extent rely upon the good faith of prison officials, the individual inmate is not left unprotected against such abuses. See Newkirk v. Butler, 499 F.2d 1214, 1217 (2d Cir. 1974).

5. See Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (holding that "[s]ince prisoners in Nebraska can lose good-time credits only if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.")

havior in the situation as possible." Section 252.3(c)–(e). With the concurrence of at least two of the three members, the committee may then impose limited restrictions, the most serious of which is confinement in a special housing unit for a period of one week. Section 252.5. Where punitive sanctions are to be imposed, a "superintendent's proceeding" is provided before an impartial employee, at which formal written charges are filed, and notice and assistance given the inmate. The charge must be supported by substantial evidence, which is to include an interview with one or more of those who witnessed the incident. Sections 253.1 to 253.4. Punishment may then be imposed, including loss of privileges, change of program, confinement up to 60 days, special diet, loss of good behavior allowance ("good time"), and a requirement of restitution for intentional damage to state property. Section 253.5. Transfer is not specified among the sanctions to which a superintendent's proceeding may give rise.[6]

We have recounted New York's prescribed procedure at some length in order to emphasize the disparity in treatment accorded inmates punished thereunder, and those who are summarily transferred for rule infractions. Had Haymes's action in circulating the petition been considered merely a minor infraction, it ordinarily would have received nothing more than a reprimand. Had it threatened danger to prison security, or had Deputy Superintendent Smith's allegation that Haymes had on other occasions rendered unauthorized legal assistance proved true, a report would have been filed for adjustment committee review. If Haymes had been thought to deserve one of the enumerated punitive sanctions, a full superintendent's proceeding would have been held.

It is, of course, much to the credit of the New York correctional system that such thorough, specific, and sensitive procedures have been codified to govern the enforcement of standards for inmate behavior. But it would be anomalous indeed, "both from a due process and an equal protection point of view, if the prison authorities could accomplish by transfer a procedure-free punishment which they could not accomplish within their own walls." Gomes v. Travisono, 490 F.2d 1209, 1215 (1st Cir. 1973).

### III.

Haymes's allegation that his transfer was intended as punishment for his violation of Rule 21 would not merit relief, however, absent a showing that the move to the Clinton Correctional Facility in fact had consequences sufficiently adverse to be properly characterized as punitive. In granting summary judgment, the district court found that there was no allegation that the facilities at Clinton were "harsher or substantially different from those afforded to petitioner at Attica," citing Wells v. McGinnis, 344 F.Supp. 594, 596 (S.D.N.Y. 1972) (administrative transfer). Whatever may be the standards governing the need for hearing prior to administrative transfer, however, see Newkirk v. Butler, supra, note 4, we do not think it dispositive that both Attica and Clinton are maximum security facilities with similar programs. Rather, we find that the hardship involved in the mere fact of dislocation may be sufficient to render Haymes's summary transfer—if a trial establishes that it was punitive—a denial of due process.

The facts of this case may provide a good illustration of the real hardship in being shuttled from one institution to another. After being sent to Clinton,

---

6. The authority to transfer inmates is given by § 23 of the Correction Law, N.Y. Correction Law § 23, (McKinney Supp.1974), which provides:

   1. The commissioner of correction shall have the power to transfer inmates from one correctional facility to another. . . . The transfer shall be in accordance with rules and regulations promulgated by the department for the safe delivery of such inmates to the designated facility. No provisions are set out governing the proper occasions for transfer, or the procedure for determining whether such an occasion in fact exists.

Haymes found himself several hundred miles away from his home and family in Buffalo, New York. Not only was he effectively separated by the transfer from his only contact with the world outside the prison, but he also was removed from the friends he had made among the inmates at Attica and forced to adjust to a new environment where he may well have been regarded as a troublemaker. Contacts with counsel would necessarily have been more difficult. A transferee suffers other consequences as well: the inmate is frequently put in administrative segregation upon arrival at the new facility, 7 N.Y.C.R.R. Part 260; personal belongings are often lost; he may be deprived of facilities and medications for psychiatric and medical treatment, see Hoitt v. Vitek, 361 F.Supp. 1238, 1249 (D.N.H.1973); and educational and rehabilitative programs can be interrupted. Moreover, the fact of transfer, and perhaps the reasons alleged therefor, will be put on the record reviewed by the parole board, and the prisoner may have difficulty rebutting, long after the fact, the adverse inference to be drawn therefrom. One can easily comprehend the bitterness which may be engendered by the capricious infliction of such unwarranted sanctions.[7] Small wonder, then, that the American Correctional Association has recognized that "[i]n any penal system embracing several institutions, transfer from one to another is often an effective disciplinary procedure as well as an administrative necessity." American Correctional Ass'n, Manual of Correctional Standards 416 (1972).

## IV.

Because of the disposition we reach upon Haymes's claim that his transfer without hearing may have denied him due process if it was punitive in nature, we need not consider whether a genuine issue of material fact is raised by the allegation that the confiscated petition was special correspondence protected by Administrative Bulletin #20. We note, however, that the mere fact that the petition requested no relief does not automatically withdraw it from the category of "legal assistance" governed by Rule 21. If those who signed the letter did not expect the court to act on it of its own accord—a fact which is not at all clear—they at least thought, as Haymes's brief admits, that the matter would be "referred . . . for investigation to other agencies, such as the FBI, interested public interest lawyers, or others . . . . ."

Nor do we think that the prohibition of unauthorized legal assistance should be rendered nugatory in any situation where the product of the forbidden collaboration happens to be a letter written to a public official. The concern underlying prison rules on legal assistance is that "strong-willed inmates might exact hidden and perhaps non-monetary fees" in return for legal advice, thereby presenting a menace to prison discipline. See Sostre v. McGinnis, 442 F.2d 178, 202 & n.47 (2d Cir. 1971) (en banc), cert. denied, 404 U.S. 1049, 92 S. Ct. 719, 30 L.Ed.2d 740 and 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972); Johnson v. Avery, 393 U.S. 483, 488, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). It would be shortsighted indeed to permit subversion of this obviously rational policy by so transparent a ruse as a mere change of salutation on legal documents.

Reversed.

7. Although Haymes's complaint did not recite many of the deprivations we have enumerated, it is important to note that he was able to retain counsel only shortly before the district court rendered summary judgment. We think it proper that "the allegations of [a] *pro se* complaint [should be held] to less stringent standards than formal pleadings drafted by lawyers . . . . " Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam). The charge that he was punished by the fact of transfer at least entitled Haymes to a hearing to explain why the transfer was onerous to him.