**Francis BLOETH, Appellant,**

v.

**Ernest L. MONTANYE, Superintendent, Appellee.**

**No. 750, Docket 74–2571.**

United States Court of Appeals, Second Circuit.

Argued March 18, 1975.

Decided April 29, 1975.

David A. Englander, New York City (The Legal Aid Society, Prisoners' Rights Project, New York City, William E. Hellerstein, Joel Berger and Warren H. Richmond, III, New York City, of counsel), for appellant.

Lillian Z. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., Joel Lewittes, Asst. Atty. Gen., of counsel), for appellee.

Before SMITH and TIMBERS, Circuit Judges, and WEINSTEIN,* District Judge.

J. JOSEPH SMITH, Circuit Judge:

In the course of serving a term of imprisonment, Francis Bloeth was transferred from New York State's Adirondack Correctional Treatment and Evaluation Center to its Attica Correctional Facility. On the day following his arrival at Attica, Bloeth was placed in protective confinement in Housing Block Z (HBZ), where his contact with the general inmate population was restricted. The prisoner immediately instituted a *pro se* civil rights action, 42 U.S.C. § 1983, 28 U.S.C. § 1343(3),[1] against the superintendent of the prison, attacking the lawfulness of his confinement in HBZ and requesting damages and in-

---

* Jack B. Weinstein of the United States District Court for the Eastern District of New York, sitting by designation.

1. § 1983. Civil action for deprivation of rights
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

§ 1343. Civil rights and elective franchise
   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   *   *   *   *   *   *
   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
   *   *   *   *   *   *

junctive relief.[2] With affidavits from both parties before him, Chief Judge John T. Curtin of the United States District Court for the Western District of New York on June 7, 1974, dismissed the complaint—in effect, thereby granting summary judgment against the plaintiff. *See* United States ex rel. Haymes v. Montanye, 505 F.2d 977, 979 (2d Cir. 1974).

■ Appropriately citing Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971) (*en banc*), as the controlling precedent in this case,[3] the appellant contends that the district court erred in concluding that the process due him under *Sostre* was in fact afforded him by the prison officials in confining him in HBZ.[4] Guided by our prior interpretation of *Sostre* in a protective confinement context in United States ex rel. Walker v. Mancusi, 467 F.2d 51 (2d Cir. 1972), we must disagree and therefore affirm the order below.

In *Sostre, supra,* 442 F.2d 178 at 198, we stated:

If substantial deprivations are to be visited upon a prisoner, it is wise that such action should at least be premised on facts rationally determined. This is

not a concept without meaning. In most cases it would probably be difficult to find an inquiry minimally fair and rational unless the prisoner were confronted with the accusation, informed of the evidence against him, and afforded a reasonable opportunity to explain his actions. [Citations omitted.]

Since Bloeth's confinement was protective as opposed to punitive—i. e., effected to guard against foreseeable harm rather than to discipline for past infractions—he suffered under New York law no loss of privileges or good time.[5] Chief Judge Curtin could reasonably have found, then, that the deprivation experienced by the appellant was relatively insubstantial. And adjusting downward *Sostre's* flexible confrontation and hearing requirements to comport with the magnitude of the deprivation, *cf.* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), one may conclude that *Sostre* was satisfied in these regards by the opportunities given Bloeth to contest the basis for his protective confinement in writing[6] and at weekly meetings with the superintendent. *Compare* United States ex rel. Walker v. Mancusi, *supra.* Furthermore,

---

2. The plaintiff originally sought to enjoin the superintendent to release him from HBZ and expunge from his prison record any reference to his stay in HBZ. The need for the court to order Bloeth's release from HBZ expired well before the court's order in the case with the prisoner's return, by virtue of institutional decision-making, to the general prison population.

3. We have no occasion to consider the import of the Supreme Court's discussion in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which was decided subsequent to the events in this case and held not to be retroactive, *id.* at 573–74.

4. Specifically, Bloeth maintains that this court should reverse the district court's determination and order judgment entered in his behalf because he was allegedly not provided in the prison with a statement of the evidence requiring, in the prison officials' view, his confinement in HBZ. Alternatively, he argues that facts critical to an adjudication of his complaint were not decided by the district court— whether or not he received the prison report

detailing the basis for his protective confinement (*see* note 8 *infra*) and whether or not he received a hearing (*see* text *infra*)—and that a remand to the district court for an evidentiary hearing is therefore appropriate.

5. *See* United States ex rel. Walker v. Mancusi, 338 F.Supp. 316, 317–18 n. 1 (W.D.N.Y.1971) (on motion for reconsideration), aff'd 467 F.2d 51 (2d Cir. 1972) (account of testimony of Walter Dunbar, Executive Deputy Commissioner of the New York State Department of Correctional Services). The regulations pertaining to protective confinement, 7 N.Y.C.R.R. §§ 304.1(b), 304.2(b), 304.3 (1970), do not state this policy.

6. On the date of his assignment to HBZ, Bloeth was given Form 251–C–1, "Inmate Response to Protective Admission and Custody Assignment," which informed him of his right to communicate "immediately in writing" with the superintendent as to "any explanation or information which you want to be considered by the Superintendent. . . . " Appendix of Appellant at 12. He received a fresh copy of this form twice more during his period of protective confinement.

the district court also acted well within its discretion in finding that the prison administration's statement of the evidence against Bloeth[7] satisfied the standards laid down in *Sostre*.[8] For if "[p]rison authorities must of necessity be allowed wide discretion in the use of protective confinement for the purpose of protecting the safety and security of the prison and its general population," United States ex rel. Walker v. Mancusi, *supra*, 467 F.2d 51 at 53, then those officials must perforce be permitted to justify their decisions to order protective confinement in terms as relatively unspecific as those used in the instant case.

■ Finally, in view of Bloeth's criminal record,[9] the several recent incidents of his resisting orders from prison officials [10] and his frequent transfers of late between state facilities,[11] the district court cannot be faulted for giving great weight to the prison officials' conclusion that Bloeth presented "a clear and imminent danger to the facility, its employees and inmates because of past action and attitude." [12] And in deferring in large measure to that conclusion, the district

court could quite properly have found that Bloeth's protective custody of 35 days did not constitute an unduly long observation period.

The order of the district court in effect granting summary judgment to the defendant is therefore affirmed.

Affirmed.

WEINSTEIN, District Judge (concurring):

I concur. The issues, however, are troublesome.

Disciplinary proceedings in prisons or jails utilize a matrix with which courts are familiar—a charge that a specific forbidden act has been committed and limited discretion to "punish" on a finding of guilt. Administrative segregation in correctional institutions presents less familiar territory—a judgment that dangers may exist in the future and an undefined discretion to "protect."

The possibilities of arbitrariness and of abuses in this second category of cases are obvious. Yet, it is equally clear that there are great potential dangers when

---

7. A prison report prepared by one Gerald R. Elmore contains the "Information Basis for Protective Admission and Custody Assignment" of the appellant:

This individual has made a rather poor institutional adjustment during the years of his incarceration and has compiled numerous disciplinary reports. He is in constant defiance of institutional rules and regulations. This inmate has been placed in Protective Administrative Custody because of his previous involvement in this Facility and other Facilities throughout the state. He presents a clear and eminent [sic] danger to the facility, its employees, and inmates because of his past actions and current attitude.
Appendix of Appellant at 14.

8. In an affidavit of July 20, 1973, submitted to the district court and sent to the plaintiff, Harold Smith, then deputy superintendent of Attica (later superintendent), specifically indicated that Bloeth received a copy of the Elmore report (*see* note 7 *supra*). Appendix of Appellant at 9–10. In his two affidavits to the district court, the plaintiff failed to refute this allegation. *See id.* at 27–33. For purposes of the summary judgment in effect granted, then, the district court could properly assume that there was no "genuine issue" as to this fact of reception. Fed.R.Civ.P. 56(c).

9. The plaintiff was at the time of suit and is currently serving a sentence of 20 years to life imprisonment for first degree murder. His criminal record unhappily extends back thirty years to his childhood and reveals numerous serious offenses. Appendix of Appellant at 15–17.

10. In an affidavit of January 2, 1974, Harold Smith, superintendent of the Attica facility, pointed to the plaintiff's refusal, while at the Adirondack facility, to submit to a rectal examination as well as the Adirondack officials' discovery of a double edge razor blade in Bloeth's cell. Appendix of Appellant at 25. As noted by the district court in its brief memorandum accompanying its order of dismissal, the plaintiff does not dispute the actual occurrence of these incidents. *Id.* at 35.

11. Between August 3, 1972, and July 20, 1973, Bloeth moved from the Green Haven Correctional Facility to the Clinton Correctional Facility to the Adirondack facility to Attica and, finally, during the pendency of this suit, to the Auburn Correctional Facility.

12. Affidavit of Harold J. Smith, Superintendent of Attica Correctional Facility, January 2, 1974. Appendix of Appellant at 25–26.

large numbers of criminals, many with demonstrated tendencies towards violence and with severe emotional and intellectual problems, are forced into the close, tension-provoking quarters of our prisons. How to balance the need for fairness and the demand for effective authority in such circumstances is a matter courts have only begun to consider. *See, e. g.,* Newkirk v. Butler, 499 F.2d 1214, 1217 (2d Cir. 1974), cert. granted, 419 U.S. 894, 95 S.Ct. 172, 42 L.Ed.2d 138 (1974); Gomes v. Travisono, 490 F.2d 1209, 1213–14 (1st Cir. 1973), remanded, 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974) (relying on Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), setting minimum due process requirements in prison disciplinary hearings); United States ex rel. Walker v. Mancusi, 467 F.2d 51 (2d Cir. 1972); Wilson v. Beame, 380 F.Supp. 1232, 1235–36 (E.D.N.Y.1974) (protective segregation prior to conviction); Ault v. Holmes, 369 F.Supp. 288, 290–91 (W.D. Ky.1973) (administrative segregation when prisoner placed himself in position "detrimental to his own welfare"); Hoitt v. Vitek, 361 F.Supp. 1238, 1251–52 (D.N. H.1973), aff'd sub nom. Laaman v. Vitek, 502 F.2d 1158 (1st Cir. 1973) ("quarantine segregation" at receiving prison); Bowers v. Smith, 353 F.Supp. 1339, 1345 (D.Vt.1972) ("safekeeping status" based on prisoner's prior record of escapes); Urbano v. McCorkle, 334 F.Supp. 161, 168 (D.N.J.1971), aff'd, 481 F.2d 1400 (3d Cir. 1973) ("prisoners who are confined to administrative segregation for the good of the institution should be entitled to the same minimal due process that is afforded prisoners who are confined to segregation for disciplinary infractions"); Long v. Harris, 332 F.Supp. 262, 264 (D.Kan.1971), aff'd, 473 F.2d 1387 (10th Cir. 1973) (describing Bureau of Prisons procedures for "segregated confinement"); Bundy v. Cannon, 328 F.Supp. 165, 173 (D.Md.1971). *See also* Note, "Procedural Due Process in the Involuntary Institutional Transfers of Prisoners," 60 U.Va.L.Rev. 333 (1974).

No information presented to us indicates that the New York state correctional authorities have yet provided fully satisfactory standards and procedures to determine when and how prisoners may be segregated administratively for their own protection or that of other inmates and personnel when they have, while in custody, committed no act warranting disciplinary action. Nevertheless, the case before us does not provide a suitable factual basis for a full consideration of the problem.