**Doris ARMSTRONG et al.,**
**Plaintiffs-Appellees,**

v.

**Benjamin WARD, Commissioner of**
**Correctional Services, et al.,**
**Defendants-Appellants.**

**No. 511, Docket 75–2109.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1975.

Decided Feb. 3, 1976.

Stephen M. Latimer, New York City (Bronx Legal Services Corp. C, Donald Grajales, New York City, Project Director; Charles H. Jones, Newark, N. J., Rutgers University Prison Law Clinic, on the brief), for plaintiffs-appellees.

Joel Lewittes, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., Stanley L. Kantor, Asst. Atty. Gen., New York City, on the brief), for defendants-appellants.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Prior to May 24, 1974, Bedford Hills Correctional Facility (hereinafter "Bedford Hills") was the only general confinement facility for adult sane female felons in New York State. Because this facility had become overcrowded, the Department of Corrections in May 1974 authorized the establishment of a second women's institution, to be located on the grounds of the Fishkill Correctional Facility in Beacon, New York (hereinafter "Fishkill"). 7 N.Y.C.R.R. 100.91 (effective May 24, 1974). Within a matter of weeks thereafter, a number of inmates

at Bedford Hills were transferred to Fishkill.[1]

What factors were relied upon to determine which women would be transferred is a matter not free from doubt. At least two of the transferees, Carol Crooks and Leslie Mason, contend that the move was intended as punishment. The prison officials respond that these two were transferred because of their inability to function at the Bedford Hills environment and that the remaining transferees were moved because of their poor reading scores on a recent examination.[2] What is clear, however, is that in no case was any inmate given advance written notice of the transfer, a hearing at which she could oppose the move or a written statement of the reasons for her selection.

While both Bedford Hills and Fishkill are classified as "medium security" institutions,[3] the accommodations at the two facilities are said to differ in significant respects. Exactly how great these differences actually are depends on whether one accepts the inmates' description of the relative living conditions or the State's. If one is to believe the State, the only major distinction between the quality of life at Bedford Hills and Fishkill is the greater availability of educational and vocational programs at the former. For the inmates, this is merely the starting point. Fishkill cells, they contend, are without sinks or toilets, poorly lit, filthy, rodent infested and have barred windows. Fishkill food is said to be cold and unpalatable. Male guards are alleged to regularly enter the cellblocks unannounced, as do male mental patients from Matteawan who must pass through the women's wing on their way to certain institutional activities. Finally, the inmates assert that their proximity to the mental hospital offers an unhealthy environment, encourages the prison officials to treat them as patients and surrounds them with "insane" persons.[4] Compared with Fishkill, Bedford Hills may still be a prison; "yet, there are those who love it."[5] The cells are clean and well kept, the food edible, the academic and vocational programs relevant and diversified and the environment conducive to rehabilitation.

On January 31, 1975, eight of the Bedford Hills inmates who had been transferred to Fishkill[6] commenced a class action in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1343(3) and (4) and 42 U.S.C. § 1983 against the State Commissioner of Correctional Services the Superintendents of Bedford Hills and Fishkill and various deputies of these officials. The suit, brought on behalf of the named plaintiffs and all others similarly situated, sought *inter alia* : (1) a permanent injunction requiring the return of all transferees to Bedford Hills; (2) a judgment declaring the transfers to have been in violation of procedural due process requirements; and (3) a permanent injunction against future transfers of any Bedford Hills inmates to Fishkill. On April 22, 1975, plaintiffs filed a motion for summary judgment and class certification with Judge Knapp to whom the case had been assigned. By then, however, the plaintiffs' situation had undergone a drastic change.

---

1. Until November 27, 1974, the transferees were housed in Building 13 at Fishkill. On that date, however, they were moved into a segregated wing of Matteawan State Hospital, located in the Fishkill facility.

2. Just what the State was intending to accomplish by creating a prison community of poor readers, is not altogether clear.

3. *See Crooks v. Warne,* 516 F.2d 837, 838 (2d Cir. 1975); 7 N.Y.C.R.R. 100.91(c).

4. These contentions, contained in paragraphs 11–23 of plaintiffs' 9(g) [General Rule 9(g) of the Local Rules of the Southern District of New York] statement in support of their motion for summary judgment, are disputed by defendants.

5. No comparison between Bedford Hills and the subject of Daniel Webster's stirring oratory in *Dartmouth College v. Woodward,* 17 U.S. 517, 4 Wheat. 518, 4 L.Ed. 629 (1819) is intended.

6. These are the eight named plaintiffs herein, Doris Armstrong, Margaret Leak, Carol Crooks, Leslie Mason, Gloria Jones, Daisy Garcia, Barbara Lee and Diedre Plain.

In early April, defendants had begun returning the transferees to Bedford Hills, and, by April 27, no female inmates remained at Fishkill.[7] In addition to advising the court of this turn in events, defendants submitted a sworn affidavit from Patrick Fish, Acting Counsel to the Department of Correctional Services of the State of New York, which stated in pertinent part:

Pursuant to orders issued by Commissioner Ward, the Department of Correctional Services has closed the female unit of the Fishkill Correctional Facility, all inmates there being transferred  .  .  .

There are no present plans to reopen the female unit at Fishkill, so long as Bedford Hills has sufficient capacity to handle adult, sane female felons. In case Fishkill is reopened, it is contemplated that it might be reopened either on a voluntary basis, or as a reception center for orientation and classification purposes.

[N]one of plaintiffs or any member of their purported class will be reassigned to Fishkill unless they request it.

.  .  .

Naturally, the reassignment of all inmates and the closing of the women's unit at Fishkill created a mootness issue. In order to resolve this problem, Judge Knapp called the parties before him on May 30. Stating for the record that he interpreted the Fish affidavit to mean that Fishkill would not be reopened unless absolutely necessary and that, in any event, no prisoner would be moved there from Bedford Hills without such prisoner's consent, Judge Knapp nevertheless expressed concern that Mr. Fish was not in a position to bind the State of New York. Accordingly, he announced his intention to call upon the Attorney General to affirm his interpretation of the affidavit and to furnish confirmation from someone in authority. Judge Knapp advised the parties that if such affirmation was given he would dismiss the complaint as moot; if not, he would grant the motion for summary judgment because "it has been established beyond cavil that Fishkill is a less desirable place to be than Bedford Hills."

Judge Knapp's subsequent communication to the Attorney General's office was referred to Corrections Commissioner Benjamin Ward who responded in a June 6 letter to the court. This letter provided in pertinent part:

At the present time, I do not intend to utilize the Fishkill Female Unit for the housing of women inmates. However, faced with the staggering population increase, I might be forced to make the administrative decision to reopen the Fishkill Female Unit. The uncertainties of the future will not allow me to foreclose any major administrative decisions revolving around the reopening of Fishkill.  .  .  .

Should it be necessary to reopen the Fishkill Female Unit, it would be my intention to reopen it on a volunteer basis or with new reception. Consequently, *at this time I do not intend to transfer to the Fishkill Female Unit any of the present inmates at Bedford Hills.* Additionally, should I reopen this Unit, it would be my intention to make physical changes  .  .  . to bring [it] more in line with the standards and conditions now found at Bedford.  .  .  . [Emphasis added].

Apparently, Commissioner Ward's letter was not sufficient to satisfy Judge Knapp.[8] On June 24, therefore, he granted plaintiffs' motion for class action status, certifying the class as "all women in the custody of the New York Department of Correctional Services at Bedford Hills Correctional Facility who are subject to be transferred to Fishkill Correctional Facility." The class having been established, Judge Knapp thereup-

---

7. With the exception of Leslie Mason who was transferred to Parkside Correctional Facility, apparently without objection, all of the named plaintiffs were returned to Bedford Hills.

8. Since no opinion was written by Judge Knapp, we are unable to ascertain his precise objections to the Commissioner's letter.

on granted plaintiffs' motion for summary judgment: (1) declaring all past transfers of named plaintiffs to Fishkill to have been in violation of due process; (2) permanently enjoining defendants from future transfer of any member of the class to Fishkill absent compliance with the procedures set out in *Newkirk v. Butler,* 499 F.2d 1214 (2d Cir. 1974), *vacated as moot sub nom. Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) and *United States ex rel. Haymes v. Montanye,* 505 F.2d 977 (1974), *cert. granted,* 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707 (1975); and (3) enjoining defendants from considering the transfer of any member of the class to Fishkill when determining her eligibility for release on parole. This appeal followed.

There have been no additional factual developments since the trial court issued its order. The state of the law regarding mootness in prisoner transfer claims has, however, been clarified if not changed by subsequent developments. On June 25, one day after Judge Knapp granted plaintiffs summary judgment, concluding in effect that the action had not been rendered moot by the closing of Fishkill, the Supreme Court decided *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), vacating as moot our decision in *Newkirk v. Butler, supra.* Despite this development, the State has not pressed the mootness issue on appeal. While we understand its desire to obtain a determination on the merits, we also recognize that federal courts have neither the "power to issue advisory opinions" nor "to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Because we believe *Preiser v. Newkirk, supra,* to be controlling, we vacate the judgment of the district court and remand with instructions to dismiss the case as moot. *See Lunz v. Preiser,* 524 F.2d 289 (2d Cir. 1975).

In *Newkirk,* an inmate who had been transferred without explanation or hearing from a medium security to a maximum security prison and who had brought suit seeking injunctive and declaratory relief, was returned to the medium security prison prior to the District Court ruling. The District Judge, while refusing to grant an injunction against future summary transfers because of the absence of a "sufficiently delineated controversy", entered a declaratory judgment requiring that Newkirk be given an opportunity to be heard in connection with any future transfer and providing that no adverse parole action could be taken against Newkirk because of the previous transfer. *Newkirk v. Butler,* 364 F.Supp. 497 (S.D.N.Y.1973). We affirmed with slight modifications, devoting most of our opinion to the due process issue and summarily disposing of the mootness problem in the closing paragraph. 499 F.2d 1214, 1219. After our decision, Newkirk was transferred to a minimum security unit and advised that he would be eligible for parole in a matter of weeks. The Supreme Court granted certiorari but directed the parties to brief and argue the question of mootness.

In its decision, the Supreme Court held that Newkirk's claim was moot and thereupon vacated the lower courts' orders. Concluding that there was "no reasonable expectation that the wrong will be repeated", the Court found nothing in the case warranting a declaratory judgment. 422 U.S. 395, 402–403, 95 S.Ct. 2330, 2335.

While we are aware that *Newkirk* was not a class action, a fact on which both the majority and concurring opinions placed great stress, 422 U.S. at 402, 404, 95 S.Ct. 2330, we do not believe this distinction to be significant in the case before us. The women's facility at Fishkill has been closed; and, in the unexpected event that reopening becomes necessary, the State has made clear its intention not to transfer any member of the current inmate population at Bedford Hills to Fishkill without her consent. As Commissioner Ward's letter covers the entire class certified by Judge Knapp, no

member thereof may successfully assert "a genuine claim of an injury or possible injury 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'" or a permanent injunction. *Newkirk, supra,* at 403, 95 S.Ct. at 2335; *Maryland Casualty Co. v. Pacific Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). Of course, our determination of whether there is a "reasonable expectation that the wrong will be repeated" is not foreclosed by the expressions of intention by the State officials. However, while there is always the *possibility* that Fishkill will have to be reopened and that the State will change its mind as to the transfer of inmates, "such speculative contingencies afford no basis for our passing on the substantive issues [appellees] would have us decide . . .." *Hall v. Beals,* 396 U.S. 45, 49, 90 S.Ct. 200, 202, 23 L.Ed.2d 214 (1969). *See also United States v. SCRAP,* 412 U.S. 669, 688–689, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

Our conclusion that there exists "no reasonable expectation that the wrong [alleged] will be repeated", *United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), is reinforced by two additional factors. The first of these is the Commissioner's stated intention to "make physical changes [in Fishkill] . . . to bring [it] more in line with the standards and conditions now found at Bedford" should it become necessary to reopen the Fishkill facility. In the event of such reopening, Judge Knapp's findings on the relative conditions at the two facilities might be of little significance.

Second, and equally compelling, is the Supreme Court's grant of certiorari in *United States ex rel. Haymes v. Montanye,* 505 F.2d 977 (1974), *cert. granted,* 422 U.S. 1055, 95 S.Ct. 2676, 45 L.Ed.2d 707 (1975), and *Fano v. Meachum,* 520 F.2d 374 (1st Cir.), *cert. granted,* ── U.S. ──, 96 S.Ct. 444, 46 L.Ed.2d 384, 44 U.S.L.W. 3344 (1975) on the issue of

whether the due process principles governing prison administration announced in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) are applicable to intrastate prison transfers and, if so, under what conditions. This is the precise issue the parties urge us to decide herein [9] and the very same issue mooted out in *Preiser v. Newkirk.* Anything we might say now would be only of interim significance. As plaintiffs are presently confined at Bedford Hills and there are no imminent plans for their removal, they are not likely to suffer while awaiting the Supreme Court's decision. If the Court rules that due process requires a hearing prior to transfer, we have little doubt that the State officials will modify their procedures accordingly. If the Court decides that no hearings are necessary, then nothing we say here will make them so when and if plaintiffs are once again transferred to Fishkill.

A closing word is appropriate here regarding that portion of Judge Knapp's order enjoining defendants from considering the transfer of any member of the class when determining her eligibility for parole. Although many of the considerations prompting us to vacate the lower court's order as moot are not applicable to the issue of parole, that issue does not impress us as significant. The State has strongly urged all along that plaintiffs were not transferred for disciplinary reasons. We would think, therefore, that it would have no objection to utilizing the procedures it followed in *Newkirk,* 422 U.S. at 399, 95 S.Ct. at 2333, of placing a note in each transferee's file explaining "that the transfer was not for disciplinary reasons" and we strongly urge it to do so. In any event, plaintiffs minimized the parole problem on oral argument and we are not inclined to make more of the matter than the parties themselves.

Vacated and remanded for dismissal as moot.

---

**9.** Judge Knapp not only relied on *Haymes* and *Newkirk* in arriving at the conclusion that there had been a due process violation, he spe-

cifically ordered the State to comply with the procedures set out by these decisions.