Elizabeth **POWELL** et al., Plaintiffs,

v.

Benjamin **WARD** et al., Defendants.

No. 74 Civ. 4628.

United States District Court,
S. D. New York.

April 23, 1975.

Bronx Legal Services Corp., Stephen Latimer, New York City, for plaintiffs.

Mortimer Sattler, Asst. Atty. Gen., for defendants.

## OPINION

STEWART, District Judge:

This is a class action brought pursuant to 42 U.S.C. § 1983 to enjoin the of-

ficials at New York's two state prisons for women from enforcing prison disciplinary procedures unless and until they comply with the guidelines set forth by the Supreme Court last term in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Plaintiffs, prisoners at the Bedford Hills and the Fishkill Correctional Facilities, ·seek *inter alia*, a preliminary injunction to enjoin defendant prison officials from holding Adjustment Committee disciplinary proceedings without certain procedural safeguards. Hearings on this motion were held before this Court last November and December, at which time testimony was heard from inmates and prison officials at Bedford Hills. Since those hearings took place prior to the amendment of plaintiffs' complaint to include the Fishkill facility, we limit our consideration of injunctive relief here to inmates at Bedford Hills. [1]

▇▇▇ For a preliminary injunction to be granted, irreparable harm to plaintiffs must be demonstrated. Sampson v. Murray, 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). As the Second Circuit has stated:

> [t]he settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury . . . . .

Sonesta Int'l Hotels Corp. v. Wellington Associates, 483 F.2d 247, 250 (2d Cir. 1973). We believe that injunctive relief is warranted, since we find that plaintiffs come within the ambit of the first test. Plaintiffs have made a clear showing of probable success on the merits; they will also be irreparably harmed in the absence of injunctive relief, since inmates who are placed in segregation without the procedural safeguards mandated by Wolff v. McDonnell, *supra*, may

be wrongfully deprived of many basic rights and privileges which are granted to the general prison population.

▇▇▇ In Wolff v. McDonnell, decided June 26, 1974, the Supreme Court held that prisoners subject to disciplinary proceedings must be accorded the following rights: advance written notice of charges to be given at least 24 hours before a hearing, a written statement by the factfinders of the evidence relied on and the reasons for the disciplinary action, the right to call witnesses and present documentary evidence when doing so does not jeopardize institutional safety or correctional goals, and the right to counsel where the inmate is illiterate or where the issues are unusually complex. 418 U.S. at 563–67, 569–70, 94 S.Ct. 2963, 41 L.Ed.2d 935. As Judge Brieant observed in a similar case involving disciplinary proceedings at Bedford Hills, "While *Wolff* is primarily concerned with disciplinary procedures relating to denial and revocation of good time credit, its holding applies with equal force to disciplinary procedures which may result in placement in solitary confinement." Crooks v. Warne, 74 Civ. 2351 (S.D.N.Y.1974). Slip Op. at 17. We agree that any disciplinary proceedings which may result in placement in solitary confinement must conform to the above-enumerated procedural requirements established by the Supreme Court in Wolff v. McDonnell, *supra*.

In New York, there are two basic types of disciplinary procedures, Superintendent's Proceedings and Adjustment Committee Proceedings. 7 N.Y.C.R.R. §§ 252, 253. The Adjustment Committee Proceeding is "said to be marked by flexibility and non-punitive intent in attempting to effectuate changes in inmate attitude," whereas the Superintendent's Proceeding is "solely disciplinary in nature." Crooks v. Warne, *supra* at 9. Despite different goals and

---

1. In our order of March 27, 1975, we conditioned our leave to amend the complaint on limiting preliminary injunctive relief, if any, to the subclass of inmates at Bedford Hills, until hearings with respect to Fishkill could be held.

procedures, both types of proceedings may result in solitary confinement.[2] In Crooks v. Warne, *supra*, Judge Brieant found that:

> While there exist a variety of disciplinary procedures available in dealing with the more recalcitrant inmates, such as the Adjustment Committee and Superintendent's Proceedings, there exists only one facility euphemistically denominated "Special Housing" wherein all disciplined inmates are kept under the same conditions of punitive segregation, without regard to the diverse causes and commitment procedures whereby they may be placed there, or the nature of the misconduct involved.
>
> According to Superintendent [Janice] Warne's testimony, all inmates requiring special custodial confinement are placed in Special Housing. . . . Among the inmates confined in Special Housing are those placed in "administrative" as well as "punitive" segregation, quarantined inmates and protective custody cases. The Superintendent admitted under cross-examination that no matter how admission to Special Housing was administratively denominated or how diverse were procedures for commitment thereto, there is no difference in the degree of punitiveness of the conditions of a person so confined. This is so whether commitment was by Adjustment Committee Proceedings or Superintendent's Proceedings. Inmates placed in Special Housing are all locked in 23 hours a day, whether committed for punitive, protective or administrative confinement. The rigors are the same.

*Id.* at 5–6. On the basis of testimony about post-*Wolff* disciplinary proceedings by various Bedford Hills inmates and Superintendent Warne before this Court last November and December, we reaffirm these findings. It is clear that it is still the established practice at the Bedford Hills Correctional Facility to place inmates subject to Adjustment Committee Proceedings in the same Special Housing units used for punishing those disciplined under Superintendent's Proceedings. Consequently, since both Superintendent's Proceedings and Adjustment Committee Proceedings may result in placement in solitary confinement, inmates subject to either type of proceeding must be accorded the procedural safeguards set forth in Wolff v. McDonnell, *supra*.

In this context, we consider the testimony presented by Bedford Hills inmates and prison officials regarding the Superintendent's Proceedings and Adjustment Committee Proceedings. Seven inmates described the disciplinary procedures they had undergone before both Adjustment Committees and Superintendent's Proceedings. Many of these inmates were placed in special housing for as long as four weeks by the Adjustment Committee "pending investigation" of charges of participating in a major disruptive incident or "riot" which occurred at Bedford Hills on August 29, 1974. The inmates testified that they were never given written notice of the charges against them prior to any Adjustment Committee Proceeding, and that they appeared before the Adjustment Committee weekly for a review of their confinement. These inmates further testified that they did not receive a written statement of the evidence relied upon by the Adjustment Committee or the reasons for the disciplinary action taken. Testimony demonstrated that this procedure was not peculiar to the

---

2. Both Adjustment Committee and Superintendent's Proceedings may result in confinement in a special housing unit or a segregation unit. The two types of punishment are similar, since both entail confinement of inmates separate and apart from the general population. The difference is that inmates in special housing are allowed to commingle with each other, whereas those in segregation are not. 7 N.Y.C.R.R. §§ 300.2(b) and (c). This distinction is unimportant here, since *Wolff* procedures apply to both special housing and segregation.

August 29 disturbance. Inmate Cyndi Reid testified that she appeared before an Adjustment Committee in July 1974, at which time she did not receive a formal written notice of the charges against her, nor did she receive a written disposition of the findings of the Adjustment Committee and the evidence upon which it relied. Similarly, inmates Margaret Gatling and Diedra Plair testified that they appeared before the Adjustment Committee in late October and early November, two months after the disturbance. They too said they were not given written notice of the charges against them or a written disposition detailing the evidence relied upon and the Adjustment Committee's findings.

Superintendent Warne confirmed in her testimony on cross-examination that written notice of the charges against an inmate are not given to the inmate before the Adjustment Committee Proceeding. Moreover, counsel for defendants conceded during the hearings that no written notice of charges is given to inmates before an Adjustment Committee Proceeding.

The evidence adduced at the hearings in this action confirms the finding hy Judge Brieant that "[t]he prisoner does not receive advance notice of the proceeding and is not given a written copy of the disposition of the charges." Crooks v. Warne, *supra*, at 8. It is thus clear that the defendants have failed to comply with two of the basic procedural requirements set forth by the Supreme Court in Wolff v. McDonnell: they have failed to provide inmates facing Adjustment Committee Proceedings with written notice of the charges against them 24 hours before the proceeding, and they have failed to provide the inmates with a written statement of the dispositions of the Adjustment Committee, together with a statement of the evidence relied on and the reasons for any disciplinary action taken.

We are thus constrained preliminarily to enjoin the defendants from utilizing Adjustment Committee Proceedings unless and until the inmates are provided with written notice of the charges against them at least 24 hours before a hearing, and unless and until the inmates are given a written statement by the factfinders of the evidence relied upon and the reason for the decision.

Plaintiffs further seek to enjoin defendants from holding Adjustment Committee Proceedings unless and until inmates are permitted to call witnesses in their defense, provided that there is no threat to institutional safety or correctional goals. Wolff v. McDonnell clearly mandates this procedure. Although no inmate testified that she was denied the right to call witnesses at an Adjustment Committee Proceeding, Gerald Burke, Director of Special Housing Units for the New York State Department of Correctional Services, testified on cross-examination that witnesses are not given the opportunity to present witnesses on their behalf at Adjustment Committee Proceedings.[3] This testimony was not contradicted by any other witness. Moreover, Judge Brieant stated in Crooks v. Warne that the defendants there had conceded that the *Wolff* procedures must be utilized in prison disciplinary proceedings at Bedford Hills, thus agreeing that inmates subject to Adjustment Committee Proceedings must be allowed to call witnesses on their behalf. Crooks v. Warne, *supra*, at 17.

Testimony at the hearings regarding the Superintendent's Proceedings demonstrated that inmates are generally given formal written notification of the charges pending against them. For example, inmates Cyndi Reid and Margaret Gatling testified that they received written notice of the charges against them at least one day before their Superintendent's Proceedings were held. Inmate Marsha Padilla testified, how-

---

3. Although Burke modified this statement by explaining that presumably an inmate could request that the Adjustment Committee call certain witnesses on her behalf, he said he had no knowledge that this had ever occurred.

ever, that she did not receive written notice of the charges against her until the evening before her Superintendent's Proceeding. She further testified that she was not given a copy of the charges against her, although she was allowed briefly to look at the formal charges. Although inmates at Superintendent's Proceedings are generally given written notification of the charges 24 hours before their Superintendent's Proceedings, we conclude that injunctive relief is warranted here to assure inmates at Bedford Hills that the standards of Wolff v. McDonnell are met in all instances.

■ There was little testimony presented regarding the right of inmates to call witnesses on their behalf at Superintendent's Proceedings. Inmate Margaret Gatling testified that she understood that inmates were not allowed to call their own witnesses at Superintendent's Proceedings. This testimony was not contradicted by either Superintendent Warne or Frances Clement, Deputy Superintendent for Security Services, who conducted numerous Superintendent's Proceedings. Significantly, no instance was cited where an inmate did call witnesses on her behalf. Moreover, the inmates' descriptions of the Superintendent's Proceedings, which we find credible, indicate that inmates were not asked if they wished to call witnesses on their behalf. Although inmates might have been allowed to call witnesses, had they asked, we believe defendants have an obligation to inform inmates that they are entitled to call witnesses at Superintendent's Proceedings. We thus believe that injunctive relief is again appropriate against defendants to assure inmates that this aspect of Wolff procedures will be followed.

Finally, although testimony at trial indicated that inmates in some instances have received written statements of the evidence relied upon and of the reasons for their disposition, neither Warne nor

Clement testified that this was the standard procedure. Thus, we believe injunctive relief against defendants also is warranted on this point.

■ We conclude that Wolff procedures must be followed for both Adjustment Committee Proceedings and Superintendent's Proceedings, and that for all proceedings which may result in confinement in special housing: (1) formal written notification of the charges must be given to the inmate at least 24 hours before the hearing; (2) at the hearing the inmate may call witnesses on her behalf, provided that doing so does not jeopardize institutional safety or correctional goals; (3) at the conclusion of the hearing the prisoner shall be given a written statement of the evidence relied on and the reasons for any action taken. This holding does not preclude plaintiff from being "confined administratively for that brief period required to draft and file charges and to give the required 24 hours written notice of hearing following any alleged episode involving violence or assaultive or disruptive behavior." Crooks v. Warne, supra, at 25. Moreover, we believe that no prisoner should be confined to special housing for more than seven days while her case is "pending investigation" by the Adjustment Committee.

We agree with Judge Brieant that:

So long as Bedford Hills continues to provide only one kind of segregated confinement . . . similar disciplinary due process safeguards must attend all such inmates who are placed therein. It is implicit in Wolff that should the administration see fit to provide separate facilities for "keeplock" or administrative segregation, without so great a diminution of privileges as attends punitive segregation, that full Wolff procedures are not necessarily applicable.

Crooks v. Warne, supra, at 25-26. [4]

4. Judge Brieant also found that "[i]n the event that the administration concludes upon the basis of an objective factual determina- tion made in good faith by a disinterested official that plaintiff must be kept away from the general prison population, such

Finally, we must decide the extent to which officers involved in the incident of alleged misbehavior or with alleged conflicts of interest should be barred from presiding over disciplinary proceedings. Inmates Margaret Gatling and Marsha Padilla testified that Lieutenant Wilson had participated in the investigation of the August 29 incident at Bedford Hills and later sat on Adjustment Committee Proceedings involving their purported misbehavior. This testimony was uncontradicted. There was also testimony by Deputy Superintendent Clement that she sat as hearing officer at Superintendent's Proceedings involving alleged acts of misbehavior occurring on August 29th. Counsel for plaintiffs urges that her position as Deputy Superintendent for Security Services created an impermissible degree of bias, since the charges in those proceedings involved perceived threats to the security of the institution, a subject of direct concern to Deputy Superintendent Clement.

 It is standard administrative law that an administrative hearing examiner must be impartial. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Neither *Wolff* nor Sostre v. McGinnis, 442 F.2d 178 (2d Cir.), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1971), the leading pre-*Wolff* prisoners' rights case, establishes specified criteria for neutral and detached hearing officers. We believe, however, that it is implicit in the notions of fairness in the due process clause that a hearing officer should not have been an investigative officer or witness. Crooks v. Warne, *supra,* at 19. We also conclude that it is improper for a prison official whose primary concern is prison security to preside over Superintendent's Proceedings (or Adjustment Committee Proceedings) where the al-

leged misbehavior purportedly threatened the security of that same institution. We thus enjoin defendants from holding disciplinary proceedings which may result in confinement in special housing where either hearing officers have been witnesses or investigative officers, or the Deputy Superintendent for Security Services or someone similarly situated presides over hearings concerning incidents which purportedly threaten the security of the prison.

This opinion shall be considered the findings of fact and conclusions of law in accordance with Rule 52(a), F.R.Civ. P. Settle order on five days notice.

So ordered.

---

non-punitive segregation must be so calculated as to grant her every privilege or benefit that may be conferred. Such administrative

segregation cannot be imposed on the same basis as punitive segregation." Crooks v. Warne, supra at 24.