Carol CROOKS, Plaintiff-Appellee,

v.

Janice WARNE, Individually and as Warden of the Bedford Hills Correctional Facility, et al., Defendants-Appellants.

No. 779, Docket 74–2520.

United States Court of Appeals, Second Circuit.

Argued March 27, 1975.

Decided May 22, 1975.

Stephen M. Latimer, New York City (Donald Grajales, Project Director, Bronx Legal Services Corp., New York City, of counsel), for plaintiff-appellee.

Stanley L. Kantor, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for defendants-appellants.

Before MULLIGAN and TIMBERS, Circuit Judges, THOMSEN,* District Judge.

THOMSEN, District Judge:

The Superintendent (sometimes referred to as the Warden) of the Bedford Hills Correctional Facility (Bedford Hills) and a captain and a lieutenant at that facility, who were the only defendants below, appeal from a judgment order entered by Judge Brieant of the Southern District of New York, (1) holding that adjustment committee hearings given to plaintiff, Carol Crooks, violated her right to due process, and (2) requiring that certain procedures be followed in any future disciplinary proceedings against the plaintiff.

During all material times before September 1974 Bedford Hills was the only correctional facility maintained for sane women in New York State. It is a medium security institution, in which female prisoners are confined without regard to their relative incorrigibility, their disruptiveness, the length of their sentences or the nature of their offense. All inmates requiring "special" custodial confinement, including those in "administrative" as well as "punitive" segregation, quarantined inmates and protective custody cases, are placed in "special housing", and are subject to the same conditions.[1]

In February 1974 plaintiff, aged 27, was an inmate at Bedford Hills, serving an indeterminate 15-year sentence for manslaughter and concurrent indeterminate 4-year sentences for attempted homicide, assault on a Rikers Island Correction Officer and possession of a dangerous drug. On February 3 she engaged in an assault on four correction officers at Bedford Hills, injuring all of them more or less seriously. A superintendent's proceeding,[2] the fairness of which is not challenged, resulted in a penalty of 60 days in punitive segregation, loss of six months good time and referral to an adjustment committee.[3]

On May 23, the day on which plaintiff's punitive segregation ended,[4] she was called before an adjustment committee consisting of Correction Captain Wooley, Correction Lieutenant Crattle (two of the defendants herein) and a civilian employee, to determine whether plaintiff could be returned to the general population of the facility without danger to other inmates and to institutional personnel. The committee decided that in view of plaintiff's hostile, contemptuous and uncooperative attitude, she could not be safely returned to the general population, and she was kept in "special custodial confinement", confined to her cell 23 hours a day, with adjustment committee hearings to be held weekly.

On May 24, intending to provoke a confrontation, plaintiff became defiant and refused to return to her cell until a several of custodial officers were brought to the scene. As a result of that incident plaintiff was called before the adjustment committee again on May 26, and was continued in special custodial confinement. Further hearings before the adjustment committee were held on June 3, 6, 13 and 20. On June 22, Super-

---

* Of the District of Maryland, sitting by designation.

1. The Rules and Regulations of the Department of Correctional Services would appear to contemplate "segregation" and "special housing" as separate units. See 7 N.Y.C.R.R. §§ 300–304.

2. 7 N.Y.C.R.R. § 253.

3. 7 N.Y.C.R.R. § 252.

4. Plaintiff's punitive segregation had been interrupted by a short period in the Westchester County Jail in connection with an indictment against her for criminal assault, resulting from the February 3 incident.

intendent Warne, pursuant to the applicable regulation, reviewed the findings of the adjustment committee and decided, on the basis of that review, to continue plaintiff in special custodial confinement. On September 1 plaintiff was transferred and reassigned to a newly activated state facility at Fishkill, New York.

Meanwhile, on May 31, plaintiff had filed this suit. Trial thereof was held on July 1 and 2. Judge Brieant issued a preliminary injunction, which was superseded by the final judgment, but did not order plaintiff returned to the general prison population. On October 1 Judge Brieant filed his written findings and conclusions and on October 11 entered a final judgment, in which he (1) concluded that the adjustment committee hearings in May and June had violated plaintiff's right to due process because (a) there was no notice to her of the charges to be considered, and (b) the adjustment committee was not an impartial committee, and (2) specified certain requirements for future disciplinary actions against plaintiff.

 With respect to (1)(a) and (2), we agree with the general conclusion that due process requires some additions to the State's procedures in cases before an adjustment committee. The extent to which procedural requirements clearly applicable to superintendent's proceedings should be applied to hearings before an adjustment committee depends upon whether the inmate is being charged with specified acts, or the question at issue is whether she presents such a danger to herself, to other prisoners or to correction officers that she should not be returned to the general population. "In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In every case involving disciplinary proceedings governed by *Wolff* she should receive written notice of the charges or concerns of the committee, including any

charge of objective misconduct, ordinarily at least 24 hours before the hearing; in appropriate cases she should be allowed to call witnesses or present written evidence; in every case she should receive promptly after the hearing a statement of the reasons for any action taken. We do not agree with the district court that under no circumstances may an inmate be segregated for more than 24 hours before written notice of charges is served on her. Ordinarily that should be done, but circumstances may require or permit exceptions. Bloeth v. Montanye, 514 F.2d 1192 (2 Cir. 1975).

 Before the expiration of the 60-day punitive segregation, two members of the adjustment committee met with the superintendent and discussed informally what procedures should be followed at the expiration of that period. The district judge found that "informal discussions before holding these hearings serves to vitiate the requirement of impartiality in acting as a fact finding body which is an essential element of minimal due process". The judge included in the judgment a paragraph which read: "No member of any Adjustment Committee meeting to which Plaintiff is a party shall discuss the pending matter with other administrative or superior officers in advance of the hearing."

That proscription is too broad; it fails to give adequate weight to the statement in Wolff v. McDonnell, supra, that there must be a mutual accommodation between institutional needs and generally applicable constitutional requirements, and to the nature of a hearing before an adjustment committee which has the duty of determining whether the particular prisoner may safely be returned to the general population, as distinguished from finding whether the inmate has violated a particular rule.

It is not improper for a member of the adjustment committee to discuss with the warden the procedures which should be followed, although it would be clearly improper for the warden to tell a member of the adjustment committee what

the decision of the committee should be or for them to discuss what the decision should be. Nor is it improper for the members of the adjustment committee to discuss among themselves the procedure to be followed, although it would be improper for them to decide the proper disposition of the case before the hearing.

Recently, on April 23, 1975, in a case entitled Powell v. Ward, et al.,[5] Judge Stewart, of the Southern District, filed an opinion, to be given effect by an order, prescribing generally similar procedures to be followed in *all* disciplinary proceedings at Bedford Hills. Because it is desirable that there be uniform rules applicable to all inmates at that institution and such rules are supplied by the decision of Judge Stewart, as it stands or as it may be modified on a possible appeal, we will vacate the judgment entered by Judge Brieant.

Vacated.