542 F.2d 101
 Elizabeth POWELL et al., Plaintiffs-Appellees,
v.
Benjamin WARD, Commissioner of Correctional Services and
Janice Warne, Individually, and as Superintendent
of Bedford Hills Correctional Facility,
Defendants-Appellants.
 No. 527, Docket 75-2107.
 United States Court of Appeals,
Second Circuit.
 Argued May 10, 1976.
Decided Sept. 17, 1976
 
 1
 Stephen M. Latimer, Bronx Legal Services Corp., New York City (Donald Grajales, Project Director, New York City, on the brief), for plaintiffs-appellees.
 
 
 2
 Margery Evans Reifler, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for defendants-appellants.
 
 
 3
 Before MOORE and TIMBERS, Circuit Judges, and NEWMAN, District Judge.*
 
 NEWMAN, District Judge:
 
 4
 In this class action brought on behalf of prisoners at New York's two state prisons for women to bring disciplinary proceedings into conformity with the procedural due process standards enunciated in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), Judge Stewart issued a preliminary injunction applicable to the sub-class of prisoners at the Bedford Hills Correctional Facility. Powell v. Ward, 392 F.Supp. 628 (S.D.N.Y.1974). This appeal[1] by defendant prison officials challenged only two provisions of that carefully drawn injunction: paragraph 1(f), concerning the membership of an Adjustment Committee or Superintendent's Proceeding in certain instances, and paragraph 2, concerning the time an inmate may be held in segregation pending a disciplinary hearing.
 
 
 5
 1. Applying the due process requirement of an impartial fact-finder, Judge Stewart ordered that no person who has participated in the investigation of acts complained of or who has been a witness to such acts could be a member of an Adjustment Committee or Superintendent's Proceeding relating to those acts. Defendants do not challenge this requirement. They do object to the disqualification of "the Deputy Superintendent for Security and any person whose job involves direct responsibility for institutional security" from membership of an Adjustment Committee or Superintendent's Proceeding "at which an inmate is charged with an act which purportedly threatens the security of the prison." Preliminary Injunction, paragraph 1(f). While making no finding that the Deputy Superintendent for Security was actually biased with respect to any prisoners charged with breaches of prison security, the District Court apparently concluded that the nature of her position and that of others with responsibility for institutional security created a risk of bias sufficient to disqualify such persons from determining allegations of misconduct that threatens the security of the prison.
 
 
 6
 In some circumstances the nature of one's position or the relationship between that position and the outcome of adjudications disqualifies a person from serving with the impartiality mandated by the Due Process Clause. See, e. g., Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). But the fact that a decision-maker has responsibilities to uphold standards of conduct does not inevitably mean that he is disqualified from adjudicating allegations that those standards have been breached. See, Hortonville Joint School District No. 1 v. Hortonville Education Assn.,--- U.S. ----, 96 S.Ct. 2308, 49 L.Ed.2d ---- (1976); Withrow v. Larkin,421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). In Wolff v. McDonnell,supra, the Supreme Court rejected a due process challenge to the impartiality of a prison discipline committee whose chairman was the Associate Warden for Custody. See also Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir.1974); Braxton v. Carlson, 483 F.2d 933 (3d Cir.1973). We conclude that prison officials responsible for maintaining security are not disqualified by the Due Process Clause from adjudicating allegations of breaches of prison security solely by the nature of their positions.[2] Apart from constitutional requirements, the advisability of giving such persons adjudicatory tasks of this nature is a matter for decision by state legislators and administrators who, of course, need not be satisfied with merely meeting the minimum standards of the Constitution.
 
 
 7
 2. To prevent recurrence of instances of prolonged segregation prior to disciplinary hearings, Judge Stewart ordered that hearings for those confined to Special Housing or segregation pending investigation of charges must be held within seven days of such confinement. Prior to the injunction, the New York Department of Correctional Services had on March 12, 1975, instructed all institutions to accord confined prisoners an Adjustment Committee hearing within three days and a Superintendent's Proceeding within seven days of such special confinement. The administrative directive specifies these time limits "in the absence of exigent circumstances." Defendants' only challenge to the District Court's seven-day limit is the lack of an exception for truly exigent circumstances. Citing an example of a disturbance involving a substantial number of inmates or violence, defendants urge that the injunction be modified to permit the seven-day limit to be extended "in unusual or emergency situations . . . but only with the permission of the Commissioner of Correctional Services or his designee." (Letter from appellants' counsel, April 28, 1976).
 
 
 8
 While we are not unmindful of plaintiffs' concern that a safety valve for emergency circumstances is capable of abuse, we think the suggested modification, fixing responsibility for exceptions at a responsible level of the Department, is consonant with the flexible standards of the Due Process Clause.[3] Plaintiffs may seek further relief if experience indicates that "emergency circumstances" are being found in unexceptional cases.
 
 
 9
 Accordingly, the order appealed from is modified by deletion of paragraph 1(f) and by adding to paragraph 2 the following: "In unusual or emergency situations, the seven-day requirement may be extended but only with the permission of the Commissioner of Correctional Services or his designee."
 
 
 10
 Affirmed as modified.
 
 
 
 *
 Of the United States District Court, District of Connecticut, sitting by designation
 
 
 [1]
 This appeal was initially before a different panel of this Court, which returned the case to the Clerk's office for reassignment in light of appellants' then pending motion for reargument in the District Court to seek reconsideration of the two matters raised on appeal. After receiving papers and hearing oral argument, the District Court declined to modify its order
 
 
 [2]
 Plaintiffs assert that the Deputy Superintendent for Security should be disqualified for reasons apart from the nature of her responsibilities. They find "incredible" her testimony that following her return from vacation, she had no specific duties with respect to the disturbance that occurred during her vacation and out of which arose many of the charges of misconduct brought against the plaintiffs. They also point to testimony by one of the plaintiffs critical of the Deputy Superintendent. There is no indication that the District Court doubted the Deputy Superintendent's testimony nor found the type of hostile relationship that in some contexts would warrant disqualification. Cf. Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971)
 
 
 [3]
 Plaintiffs mistakenly draw from our prior decision in Crooks v. Warne, 516 F.2d 837 (2d Cir.1975), a requirement that specially confined prisoners receive disciplinary hearings within 48 hours of confinement. That decision required that notice of charges should "ordinarily" be received within 24 hours of confinement and "ordinarily" at least 24 hours prior to a hearing. 516 F.2d at 839. The normal maximum time for getting notice and minimum time for a hearing after notice are not to be combined to create a maximum period of pre-hearing confinement