**Corean D. EVANS, Plaintiff,**

v.

**Frank HEADLEY, Superintendent, Bedford Hills Correctional Facility, Thomas Coughlin, Commissioner, New York Department of Correctional Services, New York Department of Correctional Services, Captain M. Burgess, Hearing Officer, Bedford Hills Correctional Facility, Defendants.**

**No. 83 Civ. 0435 (RWS).**

United States District Court,
S.D. New York.

June 22, 1983.

---

Carol Kahn, Mount Vernon, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendants; Tarquin Jay Bromley, Asst. Atty. Gen., Denver, Colo., of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Corean D. Evans ("Evans") brought this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief and damages for alleged violations of her First, Eighth and Fourteenth Amendment rights, state law and various state regulations by Frank Headley ("Headley"), Superintendent of Bedford Hills Correctional Facility ("BHCF"), Thomas Coughlin ("Coughlin"), Commissioner of New York State Department of Correctional Services, the New York Department of Correctional Services, and Captain M. Burgess ("Burgess"), a hearing officer at BHCF, (collectively the "defendants"). The defendants have moved for dismissal pursuant to Rule 12(b)(6) Fed.R.Civ.P. for failure to state a claim upon which relief can be granted, and for dismissal pursuant to 28 U.S.C. § 1915(a) on the ground that Evans' suit is frivolous. Evans has moved to amend her complaint pursuant to Rule 15(a) Fed.R. Civ.P. For the reasons set forth below, the motion to amend is granted, and the motion to dismiss is denied.

Evans has been incarcerated at BHCF since 1980. On September 2, 1982 her cell was "burned out"—intentionally set a fire by an unidentified inmate(s). According to the defendants, an inmate whose identity was not disclosed allegedly for security reasons informed prison authorities that Evans' life was being threatened. Evans sought transfer to another general population unit, but on September 3, she was notified that she was being transferred to involuntary protective custody ("IPC"). She objected to such transfer in writing, indicating her belief that transfer to another unit would provide adequate protection. On September 16, thirteen days after Evans was placed in IPC, a Superintendent's Proceeding was held at the end of which Burgess concluded that IPC was appropriate. Burgess decided that Evans would remain in such custody until October 15, at which time her situation would be reviewed. On that date, Evans was released from IPC. On September 29, counsel for Evans filed an appeal of Burgess' decision with Commissioner Coughlin and on November 10, the Commissioner's Office issued a decision affirming the September 16 determination.

Evans claims that the nature of her custody was not entirely protective as defendants allege, but disciplinary as well. Evans bases this allegation on the assertions by defendants that she had had "serious confrontations" with other inmates. She argues that under *Powell v. Ward,* 542 F.2d 101, 103 (2d Cir.1976), she was entitled to a hearing within seven days of IPC, and that failure to provide the hearing within that time worked a denial of due process in violation of the Fourteenth Amendment. The defendants argue that Evans' custody was protective only, and thus not within the protection of *Powell,* and that under 7 N.Y. C.R.R. § 304.3(c),[1] the IPC hearing must be held (and was in this case) within fourteen

---

1. 7 N.Y.C.R.R. § 304.3(c) provides:
   *Protective admissions*
   (c) Where the inmate does not consent to a protective admission to a special housing unit, or where the inmate requests reassignment and such reassignment is not made within two weeks of the date of request, a proceeding will be held within 14 days of the date of such admission or such request for reassignment to determine if there is substantial evidence that protective custody is necessary. The proceeding shall be conducted in accordance with Part 253 of this Title.

days of placement in protection. Further, defendants contend that the state regulations governing standards applicable to inmate behavior and special housing units, 7 N.Y.C.R.R. §§ 250 et seq. and 300 et seq., were complied with, and therefore, that any due process owing was afforded.

Evans claims that the hearing itself was procedurally defective because Burgess did not interview a witness with "direct knowledge" of the threats to Evans' life, allegedly in violation of 7 N.Y.C.R.R. § 253.4(c),[2] and because Evans did not have the opportunity to cross-examine such a witness, allegedly in violation of 7 N.Y.C.R.R. § 253.-4(b)(1).[3] Evans claims that Burgess' determination was not supported by substantial evidence and was arbitrary and capricious, allegedly in violation of 7 N.Y.C.R.R. § 250.3(f).[4] She asserts the same with respect to the Commissioner's affirmance of the Burgess' determination. Again, Evans argues that these procedures did not comport with the standards set forth in *Powell.* The defendants claim that a witness with "direct knowledge" of the threats—the pris-

on official to whom the threats were disclosed—testified, and that Evans had no right to cross-examine witnesses.[5]

Evans also claims that she was not permitted to participate in any work or educational programs, she could not use the law library and she had no commissary privileges while in IPC. She argues that such deprivations are unconstitutional under *Powell.* Again, defendants argue that *Powell* is not controlling here.

In addition, Evans claims that she was deprived of adequate clothing while in IPC, constituting unusual punishment in contravention of the Eighth Amendment and amounting to a violation of her due process rights as well as New York State Correction Law § 137.(3).[6] The defendants contend that Evans was given additional clothing on September 17, that her clothing was adequate, and that even if it were not, no constitutional claim has been stated.

Evans seeks to amend her complaint pursuant to Rule 15(a) Fed.R.Civ.P. to delete and add several claims and allegations

**2.** 7 N.Y.C.R.R. § 253.4(c) provides:
*Method of Determination*
(c) The person conducting the proceeding shall interview one or more employees who witnessed or have direct knowledge of the incident and he may also interview any other person who can be of assistance in contributing relevant information.

**3.** 7 N.Y.C.R.R. § 253.4(b)(1) provides:
*Method of Determination*
(b) Then the person conducting the proceeding shall ask the inmate whether he admits or denies the substance of the charge. If the inmate admits the substance of the charge, or admits any variation of the charge that is acceptable to the interviewer, the inmate shall sign his name in the place indicated for that purpose. Where the admission accepted differs from the charge made, the points of difference shall be noted on the charge by the interviewer before the inmate signs. After the inmate has signed, as hereinabove provided, a disposition shall be made. If the inmate does not make any such admission, or refuses to sign, the proceeding shall continue as provided in this section and all further interviews shall be recorded stenographically or by an electronic recording device.
(1) The inmate shall be permitted to call witnesses on his/her behalf, provided that so

doing does not jeopardize institutional safety or correctional goals.

**4.** 7 N.Y.C.R.R. § 250.3(f) provides:
*General policies on discipline of inmates*
(f) Disciplinary action must never be arbitrary or capricious, or administered for the purpose of retaliation or revenge.

**5.** *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), does not hold that inmates may cross-examine witnesses at a disciplinary proceeding. *See also Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 873, 74 L.Ed.2d 675 (1983) ("Due Process Clause requires only an informal nonadversary review of evidence"). It appears to be Evans' position that having the right to call witnesses meant she could call the inmate who informed prison officials of the threat to Evans.

**6.** New York Correction Law § 137(3) (McKinney's 1983 Supp.) provides:
§ 137. *Program of treatment, control, discipline, at correctional facilities.*
3. Each inmate shall be entitled to clothing suited to the season and weather conditions and to a sufficient quantity of wholesome and nutritious food. To the extent practicable, the clothing and bedding of inmates shall be manufactured and laundered in institutions in the department.

which, she argues, allegedly cure certain of the pleading defects raised by the defendants in their motion to dismiss. No opposition having been interposed by the defendants, leave to amend is granted, and Evans is directed to file the amended complaint within twenty (20) days of the filing of this decision.

■ For purposes of a Rule 12(b)(6) motion, the well-pleaded material allegations of the complaint are taken as admitted. 2A *Moore's Federal Practice* ¶ 12.08. A complaint should not be dismissed for insufficiency unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Id; see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Pleadings are to be liberally construed. *Id.*

Since 1975, BHCF has been under court order to conduct disciplinary proceedings in compliance with constitutional requirements of due process. The circumstances that give rise to the 1975 order are fully set forth in *Powell v. Ward,* 392 F.Supp. 628 (S.D.N.Y.1975), *aff'd as modified,* 542 F.2d 101 (2d Cir.1976), and in *Powell v. Ward,* 487 F.Supp. 917 (S.D.N.Y.1980), *aff'd as modified,* 643 F.2d 924 (2d Cir.1981). On April 19, 1980, the Hon. Charles E. Stewart referred the motion to Special Master Linda R. Singer to handle enforcement proceedings in that case.

As indicated above, Evans is a named plaintiff in that class action lawsuit. In this action, Evans claims that the September 16, Superintendent's Proceeding was not conducted in compliance with the procedures required by orders entered in connection with *Powell.* Evans views this action as "a continuation with a slightly new factual wrinkle of the practices prohibited in *Powell v. Ward."* Both parties sought to have Judge Stewart take this action as a related case, but Judge Stewart declined to do so. The parties agree that certain of the issues in this suit turn on whether *Powell* is applicable. Indeed, during argument to the court and in their papers, defendants pointed out that the Special Master had recognized that there was a genuine question as to whether IPC at BHCF should be covered by *Powell,* and had planned to issue a report on that issue shortly. *See* Fourth Report of the Special Master, *Powell v. Ward,* 74 Civ. 4628 (CES), January 10, 1983, p. 29.

On May 18, 1983, while the current motions were pending, Judge Stewart approved and adopted the Special Master's Proposed Findings of Fact and Recommendation to the Court Concerning Involuntary Protective Custody, dated April 19, 1983, which recommended that the *Powell* standards be applied in the area of involuntary protective custody. The Special Master found and concluded that "in all cases, confinement to protective custody when imposed without an inmate's consent constitutes a substantial deprivation of liberty of the type that the Orders of this Court require be imposed only after affording specific due process protections." It should be noted that the Special Master found the following with respect to Evans:

> Inmate Evans had a hearing on September 16, 1982, thirteen days after her initial admission. Captain Burgess conducted the hearing in a manner similar to a *Powell v. Ward* hearing. Inmate Evans was allowed to call witnesses on her behalf and received a written statement of the evidence. However, the inmate was not allowed to hear Lieutenant Duncan's testimony naming the inmates who had informed him of the danger inmate Evans allegedly faced in the general population. This denial was not explained on the tape, nor was a PC–6 Denial of Witnesses or Testimony Form (which is designed to comply with *Powell v. Ward*) attached to the hearing report. Ms. Evans did not appear to need an assistant or a translator. However, it was unclear from the report and tape when and how those determinations were made. Had inmate Evans been facing disciplinary charges, the defendants would have conducted the hearing at least six days sooner.

Proposed Findings of Fact and Recommendation, April 19, 1983, p. 9. By letter dated

May 3, 1983, the defendants in that action had indicated to Judge Stewart that while they did not concede that they were constitutionally required to do so, they would conduct all future IPC hearings according to *Powell* standards.

■ Based on the Special Master's findings and conclusions, and on Judge Stewart's adoption thereof, I conclude that Evans' complaint has stated a colorable claim under section 1983 in connection with the procedures followed by the defendants. And of course, to the extent that Evans asserts that the aim of the defendants was punitive and that their actions were not in compliance with *Powell,* she has stated a colorable claim. *Cf. Taylor v. Clement,* 433 F.Supp. 585, 588 (S.D.N.Y.1977) ("officials seeking to justify their conduct must come forward with evidence which will satisfy the court that safety and not punishment was in fact their aim").

■ With respect to her Eighth Amendment claim of inadequate clothing, Evans alleges that for forty-five days while in IPC, she had only one blouse, one pair of trousers and one set of underwear. She did have facilities to wash the one set of clothing, but asserts that while they were being washed and dried, she was forced to remain "wrapped up in a blanket." If the facility furnishes its prisoners with reasonably adequate clothing so as to avoid the imposition of cruel and unusual punishment, that ends its obligation under the Eighth Amendment. *See Wolfish v. Levi,* 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds sub nom., Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Newman v. Alabama,* 559 F.2d 283 (5th Cir.1977); *see also Leon v. Harris,* 489 F.Supp. 221, 223–34 (S.D.N.Y.1980) (inmate alleged, *inter alia,* that he was not provided with a change of clothes). As explained by the court in *Grubbs v. Bradley,* 552 F.Supp. 1052 (M.D. Tenn.1982):

> The Eighth Amendment clearly requires states to furnish its inmates with "reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety." *Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir.1977). Those areas are generally considered as the "core" areas entitled to Eighth Amendment protections. They are the basic necessities of civilized life, and are, during lawful incarceration for conviction of a crime, wholly controlled by prison officials. Inmates must necessarily rely upon prison officials and staff to ensure that those basic necessities are met.

*Id.* at 1122 (footnote omitted).

Whether Evans' clothing for Eighth Amendment purposes was "reasonably adequate" under the circumstances and whether the conditions of her confinement "shock the conscience" can only be determined upon a full factual record. For pleading purposes, Evans has stated a colorable claim which withstands Rule 12(b)(6) dismissal. In addition, it should be noted that the Second Circuit has recognized "a privacy interest entitled to protection concern[ing] the involuntary viewing of private parts of the body by members of the opposite sex." *Forts v. Ward,* 621 F.2d 1210, 1217 (2d Cir.1980).[7]

■ The defendants argue that Evans' damages claim is barred by the doctrine of official good faith immunity. In *McCann v. T. Coughlin, III, et al.,* 698 F.2d 112, 124 (2d Cir.1983), our Court of Appeals set forth the doctrine as follows:

> State officials have a right to qualified immunity for actions taken in their official capacity if they act in good faith and

---

**7.** Citing various state regulations in support of her motion to amend the complaint, Evans asserts that state law creates an unconditional liberty interest in adequate clothing and therefore that her clothing claim is cognizable under the due process clause of the Fourteenth Amendment. *See Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 869–71, 74 L.Ed.2d 675 (1983). The defendants' motion to dismiss the clothing claim focuses on the Eighth Amendment (and the due process clause insofar as a property interest may be involved), but does not attack Evans' liberty interest claim which she asserts will be added and clarified in her amended complaint. Therefore, the propriety of dismissal of that claim is not before me at this time.

on the basis of a reasonable belief that their actions were lawful. *Scheuer v. Rhodes,* 416 U.S. 232, 247–48 [94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90] (1974); *Wood v. Strickland,* 420 U.S. 308, 318–22 [95 S.Ct. 992, 999–1001, 43 L.Ed.2d 214] (1975). This qualified immunity has been interpreted to protect prison officials. *Procunier v. Navarette,* 434 U.S. 555, 561–62 [98 S.Ct. 855, 859–860, 55 L.Ed.2d 24] (1978). Officials are not required to predict future developments in constitutional adjudication, and can be held liable only for actions which were unlawful at the time in issue, *Procunier v. Navarette, supra,* 434 U.S. at 562, 565 [98 S.Ct. at 859, 861]; *Pierson v. Ray,* 386 U.S. 547, 557 [87 S.Ct. 1213, 1219, 18 L.Ed.2d 288] (1967). State officials, however, may be charged with constructive knowledge of the established law at that time. *See Wood v. Strickland, supra,* 420 U.S. at 322 [95 S.Ct. at 1001]; *Procunier v. Navarette, supra,* 434 U.S. at 562 [98 S.Ct. at 859].

*See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2737–40, 73 L.Ed.2d 396 (1982) (eliminating subjective part of test for qualified immunity in *Bivens* actions, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)).

The defendants argue that since the proceeding was entirely protective, the *Powell* standards did not apply at the time, and that their procedures complied with the fourteen-day requirement of 7 N.Y.C.R.R. § 304.3(c). They claim immunity, arguing that they followed the clear instructions of that provision in setting the hearing date. Although it is true that at the time of the proceeding, Judge Stewart's order that the *Powell* standards apply to IPC had not yet been issued, Evans does allege that the proceeding was partially disciplinary in nature. To the extent she so alleges, the doctrine of qualified immunity does not apply, since the defendants were obviously familiar with the *Powell* due process protections which must be afforded in connection with disciplinary proceedings and segregation.

However, if the defendants are successful in proving that the proceeding and custody were entirely protective, the doctrine of official good faith immunity is likely to shield them from so much of Evans' complaint that charges them with violating the *Powell* requirements, since at the time of their actions, *Powell* had not been applied to IPC and there were specific state regulations governing IPC, in particular, the fourteen-day requirement. Under these circumstances, it would be difficult to find the defendants had "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, supra,* 102 S.Ct. at 2738.

■ With respect to the defendants assertion of immunity regarding Evans' inadequate clothing claim, it is well-established that the institution's provision of reasonably adequate clothing is considered a "core" area entitled to Eighth Amendment protection. *See Grubbs v. Bradley, supra,* 552 F.Supp. at 1122. Again, whether Evans' clothing was "reasonably adequate" under the circumstances for Eighth Amendment purposes is an issue to be resolved upon a full factual record.

■ The defendants also seek dismissal of Evans' damages claim against Coughlin and Headley since Evans has failed to allege their personal awareness of the alleged deprivations of Evans' constitutional rights. *See McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The defendants are correct in asserting that Evans' complaint fails to allege such personal awareness. In her papers supporting her motion to amend, however, Evans alleges that she will amend her complaint to show that the statutory scheme in New York is such that Coughlin and Headley were on notice of the nature of the Superintendent's Proceedings, as well as the conditions of her custody. Evans' proposed amended complaint, it appears, will allege Coughlin and Headley's aware-

ness of, or acquiescence in, the allegedly unconstitutional conduct of their subordinates, *see McKinnon v. Patterson, supra,* 568 F.2d at 934, and their "gross negligence" or "deliberate indifference" to Evans' constitutional rights, *see McCann v. Coughlin, supra,* 698 F.2d at 125. Of course, Evans still has the burden of proving such personal involvement.

■ The defendants correctly assert that the New York Department of Correctional Services is immune from suit because "the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam) (Eleventh Amendment barred suit against Alabama and its Board of Corrections). Therefore, the action is dismissed as against the New York Department of Correctional Services. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

For the reasons set forth above, Evans' motion to amend the complaint is granted, the amended complaint to be filed within twenty (20) days of the filing of this decision, and the defendants' motion to dismiss is denied except with respect to the New York Department of Correctional Services. Discovery is to be completed by September 22, 1983 and the pretrial order is due on September 29, 1983.

IT IS SO ORDERED.