**Michael A. BOLDEN, Sr.,**
**Plaintiff-Appellee,**

v.

**Al ALSTON, Superintendent, Lincoln Correctional Facility, Nathaniel Hayes, Sergeant; and Edward Kirkland, Sergeant, Defendants-Appellants.**

No. 298, Docket 86–2219.

United States Court of Appeals,
Second Circuit.

Argued Oct. 24, 1986.

Decided Jan. 28, 1987.

Judith A. Gordon, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Sue Barnett Bohringer, Asst. Atty. Gen., New York City, on brief), for defendants-appellants.

William E. Betz, New York City (Hall, McNicol, Hamilton & Clark, New York City, on brief), for plaintiff-appellee.

Before KAUFMAN, NEWMAN and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This interlocutory appeal, challenging the denial of qualified immunity, concerns the procedural due process rights to which a state inmate is entitled in prison disciplinary proceedings. Three New York prison officials appeal from an order of the District Court for the Eastern District of New York (Mark A. Costantino, Judge) denying their immunity defense and holding them liable for failure to accord Michael Bolden due process of law in two prison hearings. For reasons that follow, we reverse and direct entry of judgment for the defendants.

## Background

The prison hearings concerned charges lodged by Sergeant Nathaniel Hayes, an officer at the Lincoln Correctional Facility (Lincoln), against Bolden, then an inmate at Lincoln. On June 16, 1982, as he approached the prison to report to work, Hayes allegedly saw Bolden standing in a below-grade area near a freight elevator and peering out through an opening accessible to the street. Claiming that Bolden's head was raised above the building line, Hayes filed an inmate misbehavior report charging Bolden with violating two prison rules—"out of place" and "abuse of privileges." At approximately 10:00 p.m. that evening Bolden received notice that these charges had been filed and that he was required to appear before the Adjustment Committee at 10:00 a.m. the following day. He was never notified of a right to call witnesses at the Adjustment Committee Proceeding.

The Adjustment Committee was a committee of one—Sergeant Edward Kirkland.[1] After reading the charges to Bolden and allowing him an opportunity to respond, Kirkland told Bolden he would recommend a Superintendent's Proceeding. Bolden was then "remanded,"[2] pending the outcome of the Superintendent's Proceeding, to a Special Housing Unit (SHU), a more restrictive form of confinement. The parties dispute whether that confinement was ordered by Kirkland or merely recommended by Kirkland and later adopted by Superintendent Alston. The record is clear, however, that later that day Alston adopted Kirkland's recommendation to convene a Superintendent's Proceeding.

In the five days intervening between the Adjustment Committee Proceeding and the beginning of the Superintendent's Proceeding, Bolden was apprised of various rights accorded him under state and federal law in connection with the latter forum. First, Alston notified him of his state statutory right to choose an employee to assist him in preparing for the Superintendent's Proceeding. Second, Bolden was served with formal charges more than twenty-four hours before the Superintendent's Proceeding convened. Third, Bolden was informed that he was entitled to call witnesses on his behalf "provided that so doing does not

---

**1.** Under the statutes in effect in June 1982, the Adjustment Committee of a correctional facility like Lincoln that housed fewer than 200 inmates need consist of only a single prison official. 7 N.Y.C.R.R. § 252.1(f) (1978). The disciplinary authority of such an Adjustment Committee was limited, however. It could impose no greater punishment than loss of privileges. 7 N.Y.C. R.R. § 252.5(e) (1978).

**2.** The term "remanded" is used in the form Kirkland sent Alston reporting on the recommendation of the Adjustment Committee.

jeopardize institutional safety or Correctional goals."

The Superintendent's Proceeding, which convened on June 22 and concluded on June 24, consisted of eight interviews conducted by Alston alone. Afterwards, Alston sustained the "out of place" charge and sentenced Bolden to time served in the SHU and denial of certain privileges. In addition, Alston recommended that Bolden lose twenty days of his "good time" credits. Based on this recommendation, the Time Allowance Committee suspended Bolden's scheduled release date of July 8, 1982; he was ultimately released on July 15, 1982.

While still in custody, Bolden filed suit under 42 U.S.C. § 1983 (1982) against Hayes, Kirkland, and Alston, seeking injunctive relief as well as compensatory and punitive damages. He claimed that the Adjustment Committee and Superintendent's Proceedings violated his rights to due process and equal protection of the law. The state moved for summary judgment based on qualified immunity; Bolden moved for summary judgment on the merits.

Assessing the cross-motions for summary judgment, the District Court found that appellants had deprived Bolden of his liberty without due process of law. The District Judge identified three categories of procedural violations: first, in the Adjustment Committee Proceeding, appellants did not accord Bolden due process rights mandated in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), including twenty-four hours' notice prior to the proceeding and either notification of a qualified right to call witnesses or an explanation why witnesses may not be called; second, in both proceedings appellants failed to follow procedures mandated by state statutes; and third, in the Superintendent's Proceeding, Alston violated Bolden's rights by impermissibly assuming the dual roles of investigator and arbiter. Concluding that these rights had been clearly established by June 1982, the District Judge rejected appellants' defense of official good faith immunity. The District Judge grant-ed summary judgment to Bolden on the issue of liability and directed the parties to submit briefs for a separate determination of injunctive relief and damages.

Hayes, Kirkland, and Alston invoke the collateral order doctrine, *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), to appeal the adverse ruling on qualified immunity. They contend that, even if they deprived Bolden of some due process rights, they did not contravene clearly established law and are therefore entitled to qualified immunity.

### Discussion

At the outset we encounter a jurisdictional problem. This is an interlocutory appeal of a denial of qualified immunity in a case already decided on the merits, at least as to liability. A final judgment has not been entered, however, since the issue of relief remains to be determined. Ordinarily an order denying qualified immunity on undisputed facts is an appealable order, *see Mitchell v. Forsyth, supra,* though it is not self-evident that an interlocutory appeal should be available to vindicate a defense that, if successful, would spare the defendants at most the burden of defending against determination of appropriate relief, now that liability has already been adjudicated. Even if an interlocutory appeal is normally available in such circumstances, this case presents a further complication: as will subsequently appear, the issue of qualified immunity is inextricably bound up with the merits of at least one of Bolden's claims. Where that relationship exists, we would normally be obliged to dismiss the appeal and thereby permit the merits to be adjudicated in the District Court. *See Group Health Inc. v. Blue Cross Ass'n,* 793 F.2d 491, 497 (2d Cir. 1986). However, since the District Judge has already adjudicated the merits of the liability issue, we can entertain the appeal of the denial of qualified immunity and exercise pendent jurisdiction to review the liability determinations. *Cf. San Filippo v. United States Trust Co. of New York, Inc.,* 737 F.2d 246, 255 (2d Cir.1984), *cert.*

*denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). In considering the issues before us, it will be helpful to deal separately with each of the three categories of alleged due process violations.

1. Concerning the alleged denial of *Wolff* rights at the Adjustment Committee Proceeding, appellants first contend that Bolden's entitlement to such rights had not been clearly established by June 1982. They also contend that the 1983 Supreme Court decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), established that *Wolff* rights are not constitutionally required in connection with interim confinement pending disciplinary proceedings. Since we are to apply the law now in effect to this appeal pending on direct review, *see Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), we must consider the application of *Helms* to appellants' liability.

In *Hewitt v. Helms, supra,* the Supreme Court relaxed the due process requirements for prison inmates placed in restrictive confinement for "administrative" as contrasted with "disciplinary" purposes. Helms, an inmate in a Pennsylvania prison, was confined to administrative segregation without benefit of *Wolff* rights while his role in a prison riot was investigated. Prison officials cited threats to security as well as the ongoing investigation as reasons for prolonging Helms' administrative segregation. The Supreme Court held that the confinement did not violate the Fourteenth Amendment. Recognizing "that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests," *Hewitt v. Helms, supra,* 459 U.S. at 467, 103 S.Ct. at 869, the Court held that, unless state law created a

liberty interest in remaining in the general prison population, administrative confinement is not subject to due process protection.

Even where statutes create a liberty interest in remaining in the general prison population, however, *Helms* held that an inmate confined for administrative reasons need receive only minimal due process rights—"some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation," *Hewitt v. Helms, supra,* 459 U.S. at 476, 103 S.Ct. at 873. The more extensive procedural protections of *Wolff* were thereby limited to confinement for disciplinary reasons. Thus, *Helms* established that the level of procedural protection differs according to the purpose of the confinement.

Appellants do not contest that Bolden had a liberty interest in remaining in the general prison population. But they argue that because Bolden, like Helms, was confined pending disposition of a misconduct charge, his confinement following the Adjustment Committee Proceeding need satisfy only the lesser due process standard set out in *Helms.* We agree. Whether Bolden was ordered into confinement in the SHU by Kirkland or by Alston, that confinement was an administrative measure taken pending the convening of a Superintendent's Proceeding. No violation was adjudicated by the Adjustment Committee Proceeding, and no disciplinary sanction was imposed. Like Helms, Bolden was administratively separated from the general prison population pending a disciplinary hearing.[3] Since Bolden had been informed of the charges and was given an opportunity to respond, he received the

---

**3.** In their brief the appellants confuse matters by calling Bolden's confinement "disciplinary," and at the same time distinguishing it from what they call "punitive" confinement. We see nothing in *Helms* to suggest that the Supreme Court contemplated three levels of due process protection—scaled for "administrative," "disciplinary," and "punitive" confinement. The distinction the Court made is between "administrative" and "disciplinary" confinement. The latter refers to confinement imposed for the purpose of punishment after an adjudication of responsibility for some breach of prison regulations. Bolden's confinement was not "disciplinary" in the sense that the Supreme Court uses that term.

minimal due process rights required for this type of administrative confinement. Whether or not appellants have qualified immunity against Bolden's claim concerning the confinement that followed the Adjustment Committee Proceeding, there is no liability for that confinement.

 2. There is also no basis for imposing liability upon Alston for his allegedly dual role at the Superintendent's Proceeding. The District Court found that Alston "controlled every aspect of the Proceeding: he conducted it, he interviewed the witnesses outside of Bolden's presence, he was the finder of fact, and he ultimately passed judgment thereon." Alston's conduct, however, is not inconsistent with the requirements of due process. In *Powell v. Ward*, 392 F.Supp. 628, 633 (S.D.N.Y.1975), the District Court ruled that a prison official who had acted as an investigative officer could not serve as a hearing officer with respect to the incident investigated. On appeal, the provision of the District Court's injunction barring such a dual role was not challenged. *Powell v. Ward*, 542 F.2d 101, 103 (2d Cir.1976). Even if such a dual role would violate due process in the prison context, Alston did not act in the dual capacities of the prison official in *Powell*. In that case the prison official had conducted an investigation and later served on Adjustment Committees adjudicating the matters investigated. *Powell v. Ward, supra*, 392 F.Supp. at 633. In the instant case, Alston conducted no investigation prior to the Superintendent's Proceeding. His interviews of witnesses, tape recorded and transcribed, reflect that he was functioning as the presiding officer of the Superintendent's Proceeding, developing a formal hearing record. To the extent that he took testimony from witnesses out of Bolden's presence, he did not violate any due process requirement. *See Baxter v. Palmigiano*, 425 U.S. 308, 322, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976). Because Alston's conduct at the hearing did not impair any due process rights to which Bolden was entitled, no liability exists.

 3. Finally, Bolden's state law claims are not a basis for liability in this suit. State procedural requirements do not establish federal constitutional rights. *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir.1979). *See Deane v. Dunbar*, 777 F.2d 871 (2d Cir.1985). At most, any violation of state procedural requirements would create liability under state law, and, since the section 1983 claims fail on the undisputed facts, this is not an appropriate case for the exercise by the District Court of pendent jurisdiction over state law claims.

Since none of the defendants has violated any of Bolden's constitutional rights, the order appealed from must be reversed and the case remanded with directions to enter judgment for the defendants.